**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ASHLEY MUSKELLY, |
| Plaintiff, |
| v. |
| DISTRICT OF COLUMBIA, |
| Defendant. |

Civil Action No. 18-740 (JEB)

**MEMORANDUM OPINION**

Plaintiff Ashley Muskelly filed an administrative action against the District of Columbia Public Schools, alleging that her son T.E. had been denied a free and appropriate public education (FAPE) in violation of the Individuals with Disabilities Education Act. Before her claim was adjudicated, the parties settled. Muskelly then brought this action demanding $70,729.40 in attorney fees. Concluding that she is entitled to most, but not all, of the award she seeks, the Court will grant in part and deny in part her Motion for fees.

**I.    Background**

A brief sketch of the background is all that is required here. The purpose of IDEA is "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). On October 16, 2017, Muskelly filed an administrative due-process complaint against DCPS, alleging that T.E. had received an inappropriate individualized education program and been denied a FAPE. See ECF 1 (Complaint), ¶ 8. The parties subsequently reached a settlement before the claim proceeded to administrative adjudication, let alone court. They so informed a

1

hearing officer on December 20, 2017, and the settlement was incorporated into a Hearing Officer Determination one week later. Id., ¶¶ 9–10.

In seeking fees here, Plaintiff believes herself entitled to $70,729.40. Id., ¶ 16. The District agrees she should collect some fees but suggests the award should be about $15,000 less. See ECF No. 8 (Defendant's Opposition) at 17–18.

## II.     Analysis

IDEA confers on the Court discretion to "award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability" in an action under the Act. See 20 U.S.C. § 1415(i)(3)(B)(i)(I). In determining what amount, if any, is appropriate under the statute, the Court makes two inquiries. First, it decides whether the party seeking fees is "the prevailing party" and is thus eligible to receive any fees at all. See Jackson v. District of Columbia, 696 F. Supp. 2d 97, 101 (D.D.C. 2010). If so, the next question is whether the fee sought is reasonable. A "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case," Perdue v. Kenny A., 559 U.S. 542, 552 (2010), "but [that does] not produce windfalls to attorneys." Blum v. Stenson, 465 U.S. 886, 897 (1984). The plaintiff has the burden of establishing reasonableness. See In re North, 59 F.3d 184, 189 (D.C. Cir. 1995).

The District does not "dispute that Plaintiff is a prevailing party entitled to some attorney[] fees and costs." Opp. at 5. The only issue therefore is whether the amount of the award Plaintiff requests is reasonable. On that issue, the D.C. Circuit has set forth a "three-part analysis." See Eley v. District of Columbia, 793 F.3d 97, 100 (D.C. Cir. 2015) (evaluating fees under IDEA); Salazar v. District of Columbia, 809 F.3d 58, 61 (D.C. Cir. 2015) (applying framework to § 1983 fee request). The first step is to "determine the 'number of hours

reasonably expended in litigation.'" Salazar, 809 F.3d at 61 (quoting Eley, 793 F.3d at 100). Next, the Court sets "the reasonable hourly rate." Id. (quoting Eley, 793 F.3d at 100). The Court last applies "multipliers as 'warranted.'" Id.; see also George Hyman Const. Co. v. Brooks, 963 F.2d 1532, 1535–36 (D.C. Cir. 1992).

Defendant challenges Muskelly's request for fees under only the second step of the D.C. Circuit's framework. In other words, it does not contest the reasonableness of the number of hours expended by Muskelly's attorneys, and neither party contends that a multiplier is warranted at the third step. The Court will therefore address just the second step — *viz.*, the appropriate rate. Afterwards, it will examine the only other remaining dispute: whether Plaintiff is entitled to the approximately $4,800 in expert fees she seeks.

A. Reasonable Rate

As is the case in so many of these challenges, the parties dispute what constitutes a reasonable hourly rate by which the Court should calculate fee awards for IDEA matters in the District. The statute states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. §1415(i)(3)(C). "Fee applicants in IDEA cases have relied on two separate, but inter-related, approaches to providing evidence of prevailing market rate." Reed v. District of Columbia, 843 F.3d 517, 521 (D.C. Cir. 2016). They can demonstrate that IDEA litigation qualifies as "complex federal litigation," or they can "provid[e] evidence of the fees charged, and received, by IDEA litigators." Id.; see also Flood v. District of Columbia, 172 F. Supp. 3d 197, 210 (D.D.C. 2016). As Plaintiff pursues both approaches here, the Court will address each in turn.

3

1.  *Complex Federal Litigation*

Plaintiff first contends that IDEA litigation is complex federal litigation to which the rates enumerated in the USAO Attorney's Fees Matrix presumptively apply. See ECF No. 7 (Motion) at 4 (citing Reed, 843 F.3d at 526). She offers two declarations — one from Michael T. Kirkpatrick and one from Gary E. Mason — in support. See ECF Nos. 7-5 (Declaration of Michael T. Kirkpatrick), 7-6 (Declaration of Gary E. Mason). The District rejoins that IDEA litigation is not within the category of complex federal litigation as determined by an overwhelming number of decisions in this district. See Opp. at 7–9 & n.2. As an initial matter, the Court notes that neither party argues that the current Matrix — following its overhaul in 2015 — reflects rates beyond those for complex federal litigation and so might cover a broader category of cases. The Court, consequently, will limit its analysis to the question of whether IDEA litigation qualifies as complex federal litigation. If so, it will award USAO Matrix fees.

IDEA cases, the Court believes, do not so qualify. This conclusion accords with the weight of authority in this district. See, e.g., Lee v. District of Columbia, 298 F. Supp. 3d 4, 13 (D.D.C. 2018); Dobbins v. District of Columbia, 2017 WL 7510879, at *6 (D.D.C. Oct. 24, 2017) ("Accordingly, following the lead of other courts in this jurisdiction . . . the undersigned finds that Plaintiff has failed to demonstrate that IDEA litigation in general is sufficiently complex to justify the presumptive application of [Matrix] rates."); Snead v. District of Columbia, 139 F. Supp. 3d 375, 379 (D.D.C. 2015) (collecting cases and noting that courts in this jurisdiction have interpreted Circuit law "as strongly suggesting that IDEA matters are infrequently comparable to complex federal litigation, and therefore, full [Matrix] rates should not be awarded in such cases"); Rooths v. District of Columbia, 802 F. Supp. 2d 56, 62–63 (D.D.C. 2011) (finding that IDEA case did "not much resemble the sort of complicated cases in

which a plaintiff's counsel is appropriately awarded fees as the maximum allowable rate" because "[l]ike most IDEA cases, the claim on which the plaintiff prevailed . . . involved very simple facts, little evidence, and no novel or complicated questions of law").

Muskelly in rejoinder relies on a Circuit concurrence reasoning that IDEA litigation is complex because — like Title VII litigation, which qualifies as complex — IDEA cases require familiarity with non-legal subjects like child psychology, necessitate the retention of experts, and involve a complex organization in the public-school system. See Motion at 4–5 (citing Reed, 843 F.3d at 528–29 (Tatel, J., concurring)). The Circuit, however, has already declined to adopt the proposition that these features necessarily render it complex federal litigation. See Reed, 843 F.3d at 524–25. It elaborated that, while "attorneys who litigate IDEA cases may have 'specialized non-legal knowledge[,]' . . . this is true in a number of specialized fields" that are not considered complex. Id. at 525. It also addressed the plaintiffs' contention that "limited discovery and pretrial exchange . . . makes preparing for and litigating IDEA cases more complicated, especially because hearing officers typically allow respondents to spontaneously adjust defenses." Id. (internal quotation marks and citations omitted). The Circuit reasoned, however, that the lack of discovery may in fact "suggest that IDEA cases are not as complex as cases in which discovery is extensive." Id. The Circuit concluded that future fee applicants may be able to "divine a unifying thread that will bring IDEA cases under the umbrella of 'complex federal litigation,'" but found nothing before it in that case so demonstrated. Id. at 526.

Likewise, Muskelly has offered no evidence here that would clear that bar. She contends that the Kirkpatrick and Mason declarations show that IDEA litigation is complex, see Motion at 5–7, but they do not bear the weight she places on them. The Kirkpatrick declaration, for one,

addresses IDEA litigation in the Supreme Court, see Kirkpatrick Decl., ¶ 7, which says little about whether IDEA cases at this level are generally complex. Mason, by contrast, is not even an IDEA litigator and has offered no specific experience with IDEA litigation. See Mason Decl., ¶ 14. Instead, he suggests that these cases are complex because they involve inter-disciplinary work with non-legal fields, a lack of discovery, the use of experts to make difficult determinations regarding remedies and a student's progression, and the interplay of federal and state standards. Id., ¶¶ 15–19. The Circuit has already dismissed the proposition that either of the first two features renders IDEA litigation complex. See Reed, 843 F.3d at 525. And neither of the others gets Plaintiff across the finish line. The gravamen of the point about remedies is that "IDEA requires mastery of non-legal disciplines to quantify harm and develop appropriate remedies." Mason Decl., ¶ 18. As discussed, however, requiring knowledge of such topics does not render IDEA litigation complex. Finally, the declaration does not detail why the interplay of federal and state standards makes the litigation especially difficult or complex, beyond highlighting one case where multiple remands shuttled a case between Superior Court and District Court, resulting in a "nuanced inquiry about subject matter jurisdiction and forum." Id., ¶ 15. That a single case may have an involved procedural history does not mean that IDEA litigation generally is subject to those complications. (Indeed, the current case never made it through a courthouse door, federal or state.) The more general assertion, moreover, that the interplay of federal and state standards complicates IDEA litigation is the kind of "conclusory statement[]" that the Circuit has concluded cannot "suffice to meet [Plaintiff's] burden" to demonstrate its status as complex. See Reed, 843 F.3d at 525.

Put another way, the trouble for Plaintiff is that this Court's approach is categorical — that is, it must determine whether the paradigmatic IDEA case constitutes complex federal

6

litigation. See Reed, 843 F.3d at 521, 526 (noting that "fee applicants have focused their efforts on attempting to demonstrate that IDEA cases fall within the bounds of [complex federal] litigation" and reasoning that to be successful future fee applicants will have to "divine a unifying thread that will bring IDEA cases under the umbrella of 'complex federal litigation'"); Lee, 298 F. Supp. 3d at 13 (explaining that "if a litigant is intent on seeking a fee using the USAO matrix, she must show that IDEA cases are complex federal litigation"); Snead, 139 F. Supp. 3d at 379 ("[T]he relevant inquiry is whether IDEA proceedings as a class of litigation qualify as 'complex federal litigation.'") (citation omitted). As a result, Muskelly's next position — that IDEA litigation is at least as complex as some Freedom of Information Act and Endangered Species Act cases where Matrix rates have been awarded — is unavailing. See Motion at 7–8. Specifically, she points to four individual cases, arguing that they cannot have been complex because few or no substantive motions appear on the docket. Id. Because the inquiry must be generalized, the citation to a handful of cases that may not be representative of their whole category is of limited use.

Finally, even if the question of complexity were not categorical, Plaintiff would not fare better. Despite the categorical language in Reed, "some judges in this District have applied the . . . Matrix in the 'unusual case' where the applicant is able to show that her particular case is 'unusually complex." Lee, 298 F. Supp. 3d at 13 (citing Cox v. District of Columbia, 264 F. Supp. 3d 131, 143 (D.D.C. 2017)). Muskelly offers no argument that her case falls within this description. Indeed, it did not ultimately even go to administrative adjudication, let alone proceed to a court. Rather, the parties settled approximately two months from the date she filed her administrative complaint. See Compl., ¶¶ 8–9. Under these circumstances, the Court has little trouble concluding that Plaintiff's is not the rare, unusually complicated case.

## 2. *Fees Charged by IDEA Litigators*

Muskelly spills less ink on the second route by which she may show reasonableness — namely, the prevailing rate charged by IDEA litigators in the community. She has not "provid[ed] evidence of the fees charged, and received, by IDEA litigators" in the District. Reed, 843 F.3d at 521. Instead, she points to several cases from this district in which IDEA practitioners have been awarded full Matrix rates. See Motion at 9–10. This Court addressed a nearly identical issue — with almost the same citations offered in support — in a recent case. See Davis v. District of Columbia, 2018 WL 6181736, at *4 (Nov. 27, 2018). As in that case, Muskelly falls short of the required showing.

The cases Plaintiff offers are a mixed bag. Two do not reason that their plaintiffs have demonstrated that the prevailing market rate for IDEA litigation is the Matrix rate, but rather that they have proved IDEA litigation to be complex, a contention the Court addressed above. See Joaquin v. District of Columbia, 210 F. Supp. 3d 64, 69 (D.D.C. 2016); Shaw v. District of Columbia, 210 F. Supp. 3d 46, 49 (D.D.C. 2016). The other cases she offers do approve Matrix rates for IDEA litigation based on a prevailing-market-rate showing. In each of those cases, however, the district court had before it other evidence or additional declarations from a variety of comparable practitioners in D.C. explaining that their rates are in line with what the attorneys in those cases charged. See Merrick v. District of Columbia, 316 F. Supp. 3d 498, 512–13 (D.D.C. 2018) (weighing five declarations on complexity of IDEA litigation and reasonable rate); Wimbish v. District of Columbia, 251 F. Supp. 3d 187, 192 (D.D.C. 2017) (reviewing "in addition to affidavits from [the plaintiff's] attorneys . . . nine affidavits from IDEA practitioners in this jurisdiction"); Copeland v. District of Columbia, 208 F. Supp. 3d 255, 257 (D.D.C. 2016) (describing the submission of, "in addition to detailed affidavits from [the plaintiff's] own

attorneys, . . . affidavits from five IDEA practitioners, unaffiliated with this litigation, all of which support Plaintiff's contention that IDEA litigators commonly charge and are awarded standard Laffey rates, and that rates significantly below that measure in this case would be insufficient"); Flood v. District of Columbia, 172 F. Supp. 3d 197, 211 (D.D.C. 2016) (considering five additional declarations from attorneys specializing in a variety of related areas); Eley v. District of Columbia, 201 F. Supp. 3d 150, 163 (D.D.C. 2016) (considering a survey of 132 cases). Unlike in those cases, Plaintiff offers no declarations or comparable evidence to substantiate the prevailing market rate.

Even if the Court were to consider these citations to be somewhat persuasive evidence of the prevailing market rate, they cannot overcome the scores of district-court decisions here, including this Court's own, where attorney fees in IDEA matters have been awarded at 75% of the USAO Matrix rate. See, e.g., Davis, 2018 WL 6181736, at *4 (Boasberg, J.); James v. District of Columbia, 302 F. Supp. 3d 213, 221–22 (D.D.C. 2018) ("Moreover, even were the court to credit these [several recent cases in this district in which judges have awarded the USAO Matrix rates], they are too few in number to meet Plaintiff's burden of establishing the prevailing market rate," particularly "because 'an overwhelming number of cases' in this district have awarded 'IDEA fees [that] adopt rates equivalent to seventy-five percent of Laffey Matrix rates.'") (quoting Cox v. District of Columbia, 264 F. Supp. 3d 131, 145 (D.D.C. 2017) (other internal citations omitted)); Joaquin v. Friendship Public Charter School, 188 F. Supp. 3d 1, 20 (D.D.C. 2016), appeal dismissed, No. 16-7084, 2017 WL 2332623 (D.C. Cir. Feb. 22, 2017) ("The Court therefore finds that the prevailing rates in the community for IDEA litigation are those equivalent to seventy-five percent of . . . Matrix rates."); Brown v. District of Columbia, 80 F. Supp. 3d 90, 98 (D.D.C. 2015); Cook v. District of Columbia, 115 F. Supp. 3d 98, 103–04

(D.D.C. 2015); Briggs v. District of Columbia, 73 F. Supp. 3d 59, 63–64 (D.D.C. 2014); Douglas v. District of Columbia, 67 F. Supp. 3d 36, 42–43 (D.D.C. 2014); McAllister v. District of Columbia, 53 F. Supp. 3d 55, 60–61 (D.D.C. 2014); Haywood v. District of Columbia, No. 12-1722, 2013 WL 5211437, at *6 (D.D.C. Aug. 23, 2013); Davis v. District of Columbia, 864 F. Supp. 2d 110, 119 (D.D.C. 2012); Flores v. District of Columbia, 857 F. Supp. 2d 15, 22 (D.D.C. 2012); Huntley v. District of Columbia, 860 F. Supp. 2d 53, 59–60 (D.D.C. 2012); Petway v. District of Columbia, 858 F. Supp. 2d 70, 78 (D.D.C. 2012); Sykes v. District of Columbia, 870 F. Supp. 2d 86, 96–97 (D.D.C. 2012); Wood v. District of Columbia, 864 F. Supp. 2d 82, 92 (D.D.C. 2012). This Court, accordingly, will likewise award fees equivalent to 75% of the Matrix rate.

Finally, one dust-up remains, but its resolution does not alter the Court's conclusion. Defendant offers a declaration and associated charts documenting the invoices DCPS received in fiscal years 2014–16 from attorneys seeking reimbursement for fees and costs. See Opp. at 15–16. In each of those years, a majority of cases were settled, and the District indicates that those settlements all reflected 75% of the Matrix rate. Id.; see also Opp., Exh. 1 (Declaration of Floyd Hayes), ¶¶ 4–7. Plaintiff protests that the declaration is not credible because none of the settlements was "reached by applying [75%] of the [M]atrix rates" but rather "range from 13% to 62% of the [M]atrix rates." Reply at 2. The Court does not rely, however, on the Hayes Declaration in reaching its conclusion that 75% of the Matrix rate is appropriate. Even if it were to so rely and Plaintiff were correct about the numbers, the fact that DCPS consistently settles fee requests at less than 75% of the Matrix rate certainly does not suggest that Plaintiff should be entitled to more.

10

B.  Expert Fees

The Court, "in its discretion, may award reasonable expert witness fees as part of the costs to a prevailing party . . . [w]ho is the parent of a child with a disability." D.C. Code § 38-2571.03(7)(A)(i). As with attorney fees, "[a]ny [expert] fees awarded . . . shall be based on rates prevailing in the community." D.C. Code § 38-2571.03(7)(B). Here, Plaintiff requests $4,762 for "the expenses paid to the Weinfeld Education Group for their work in this case." Motion at 12; Reply at 6. Defendant objects that Muskelly has not "provide[d] any information on the number of hours . . . Weinfeld spent on the case, the nature of the work, the hourly rate, or information on the prevailing market rate for the kind and quality of services provided by . . . Weinfeld." Opp. at 17. Plaintiff rejoins that no authority requires her to "provide an invoice of Weinfeld's hours . . . [or] the kind of services received." Reply at 6.

The Court, however, cannot assess the reasonableness of Plaintiff's expert-fee request in the absence of any documentation regarding what services Weinfeld performed. Muskelly does not attach any information on this point, nor does she describe their work in her briefs beyond one general mention of the "market rate for evaluations." Motion at 12. She need not give an hourly breakdown of Weinfeld's work, but the Court requires some description of their general activities before awarding fees. While Plaintiff cannot, therefore, get expert fees on this Motion, she may subsequently move, if she so chooses, to amend the judgment and supplement her fee request by explaining what services Weinfeld performed. Upon receiving that explanation, the Court may grant the expert fees sought, although it trusts the District will carefully review the request before requiring further Court involvement.

C. Calculations

Only the numbers remain. In calculating the fees award here, the Court: (1) takes the number of hours reasonably expended, and (2) multiplies it by the reasonable hourly rate. The rate, as the Court explained, is 75% of the Matrix number, which varies based on an attorney's years of experience.

1. *Nigel M. Atwell*

Based on Atwell's 21 years of practice, see Motion, Attach. 3 (Declaration of Nigel Atwell), ¶ 2, his applicable Matrix rate is $563. See Motion, Attach. 7 (USAO Matrix). Plaintiff's invoice indicates that he worked 99.8 hours on this case. See Motion, Attach. 8 (Invoice).

TOTAL: 99.8 hours x ($563 x .75) = $42,140.55

2. *Stacey Eunnae*

Based on her 5 years of practice, see Motion, Attach. 4 (Declaration of Stacey Eunnae), ¶ 2, her applicable Matrix rate is $346. See USAO Matrix. She worked 48.1 hours on the case. See Invoice.

TOTAL: 48.1 hours x ($346 x .75) = $12,481.95

\* \* \*

The grand total — adding Atwell's $42,140.55 and Eunnae's $12,481.95 — thus amounts to $54,622.50. Although Defendant calculates the grant total as $56,622.50, see Opp. at 18, it is clearly a typographical error as the underlying calculations for Atwell's and Eunnae's fees yield the Court's sum.

## III. Conclusion

For these reasons, the Court will grant in part and deny in part Plaintiff's Motion for Attorneys' Fees.  A separate Order awarding $54,622.50 will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 5, 2019